AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

JUL 1 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

T-Mobile Regarding Phone Number (951) 758-2732
IMSI# 310260070350959

)
)
)
)
)
)

Case No. 1 9 M J 2 8 6 5

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §952 and 960 | Importation of a Methamphetamine |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Morse, SA, Department of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/10/19

_____
*Judge's signature*

City and state: San Diego, CA

Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### *Item to be Searched*

This warrant applies to records and information associated with phone number (951)758-2732, with the International Mobile Subscriber Identity ("IMSI") number 310260070350959 (the "Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504.

**ATTACHMENT B**

*Items to be Seized*

The officer executing the warrant shall permit T-Mobile, as custodian of the computer files described in Section I below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**I.  Items to be provided by the Provider**

The following information about the customers or subscribers of the Account:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); and

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

       ii. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data transactions;

     iii. All available Timing Advance Reports, currently known as True Call, to include cell site, sector, and distance from tower, IP session and Data;

     iv. T-Mobile & Metro by T-Mobile, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network;

      v. List of all cell-sites, as of January 2019, for all state(s) in which the above records used cell locations. Cell site lists to include switch, cell-site number, name, physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector; and

     vi. All available Mobile Data Session and IPv6 reports.

## II.    Information to be Seized by the Government

All information described in Section I that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952 and 960 and involving JOSE ROSALES during the period of December 22, 2018 up to and including March 21, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Ryan Morse, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I make this affidavit in support of an application for information associated with the phone number (951)758-2732, with the International Mobile Subscriber Identity ("IMSI") number 310260070350959 (the "Account"), including subscriber information, telephone toll data and cell-site geo-location information for the period of December 22, 2018 up to and including March 21, 2019. As set forth below, probable cause exists to believe the Account contains evidence of violations of federal law, namely, importation of controlled substances and conspiracy to import controlled substances, in violation of 21 U.S.C. §§ 952, 960 and 963.

2.     The data associated with the Account is currently in the possession of T-Mobile, headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B. This Court has jurisdiction to issue this warrant because it is "a district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A).

**TRAINING AND EXPERIENCE**

3.     I am a Special Agent (SA) with ICE-HSI and have been so employed since October 2016, having graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia in March

of 2017 and the Homeland Security Investigations Special Agent Training Program in July of 2017.

4.     The combined Academy curriculums covers specialized training in the Immigration and Naturalization Act, criminal investigations, criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, controlled substances violations, and in Title 19 United States Code, customs law violations.   Prior to my employment with HSI, I was employed as a full-time, sworn federal agent with the Federal Air Marshal Service for approximately 5 years and 7 months.   In 2011, I graduated from the Federal Air Marshal Training Program at the FLETC located in Artesia, New Mexico as well as the Federal Air Marshal Training Program advanced training at the Transportation Security Administration Training Center in Atlantic City, New Jersey.   I have a Master's Degree in National Security from the University of New Haven.

5.     I am currently working in a financial investigations group; however, I was previously assigned to Contraband Smuggling Group 3 (CS3) for approximately 1 year and 10 months.   CS3 is primarily tasked with investigating, arresting, and prosecuting narcotics smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor as well as other offenses that occur at the Ports of Entry in San Diego County including assaults on federal officers, escapes from federal custody, and a variety of other federal offenses.   CS3 agents deploy in plain clothes attire and drive department unmarked vehicles.

6.     I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.   I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants.   I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

7.     My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including methamphetamine, and the investigation of persons in possession of narcotics for purposes of sales and

2

1   transportation. In addition, I speak with other narcotics investigators regarding the manner
2   in which sellers of narcotics store, transport and sell narcotics. I also regularly extract and
3   analyze mobile devices and other digital evidence associated with narcotic investigations.

4        8.    In the course of my duties, I have personally participated in and conducted
5   investigations of violations of various State and Federal criminal laws, including those
6   related to narcotics violations. I have arrested or participated in the arrest of persons for
7   violations of the Controlled Substances Act. In these cases, I have conducted interviews
8   with the arrested persons and their associates. I have conducted surveillance of narcotics
9   smugglers as they conduct their smuggling activity while crossing the border from Mexico
10  into the United States. Through these investigative activities, I have gained a working
11  knowledge and insight into the typical activity of narcotics smugglers, and the structure of
12  their narcotics smuggling networks.

13       9.    The following is based on my own investigation, oral and written reports by
14  other law enforcement officers, interviews, subpoenaed and public records, database
15  checks, and other investigations. Since this affidavit is for a limited purpose, I have not
16  included every fact I know about this investigation. I set forth only facts necessary to
17  establish foundation for the requested search warrant application. Conversations and
18  discussions below are set forth in substance unless noted.

19          **FACTS IN SUPPORT OF PROBABLE CAUSE**

20       10.    According to a report prepared by CBP Canine Enforcement Officer Pittman,
21  on March 21, 2019, he and his Narcotics and Human Detection Dog, "Tammy," were
22  roving in pre-primary inspection at the Otay Mesa POE when they encountered a White
23  Toyota Highlander with California license plate 8FPA647 (the "Vehicle"). Tammy alerted
24  to the back undercarriage of the vehicle.

25       11.    According to a report prepared by CBP Officer Ibarra, at approximately 5:51
26  p.m. on the same day, he was working at the Otay Mesa POE and was informed by Officer
27  Pittman that Tammy had alerted to the Vehicle. Officer Ibarra approached the Vehicle and
28  obtained two negative customs declarations from ROSALES. ROSALES stated that he

1   owned the Vehicle. The Vehicle was driven to the secondary lot, where Officers Pittman
2   and Ibarra continued to inspect it. During this inspection, they noticed that bolts holding
3   one of the seats had been tampered with, at which point Officer Pittman drilled a hole in
4   the floor of the Vehicle, and Officer Ibarra noticed what appeared to be narcotics packages
5   in the floor.

6       12.    According to a report prepared by CBP Officer Norman, she received the
7   Vehicle for seizure processing in the secondary lot of Otay Mesa. She and a mechanic
8   removed the rear tires and saw access panels in each tire well. After opening the panels,
9   Officer Norman removed some packages from each side, but the remainder were stuck in
10  the compartment. The mechanic then gained access to the compartment from the top by
11  removing the third row seat and cutting open the top of the compartment, thus revealing a
12  layer of black carbon fiber and packages underneath it. Officer Norman recovered a total
13  of 38 packages from the Vehicle, each double-bagged in vacuum-sealed freezer bags.
14  Officer Norman tested the substance contained within one of those packages, which tested
15  positive for the properties of methamphetamine. A chemical analysis report confirmed the
16  substance within the packages was methamphetamine with 99% purity and a total weight
17  of approximately 17.86 kilograms.

18      13.    I was notified of the event, responded to the Otay Mesa POE, and
19  subsequently placed ROSALES under arrest. I further seized the Vehicle, the
20  methamphetamine packages, and a cell phone, which had been previously seized from
21  ROSALES.

22      14.    I advised ROSALES of his Miranda rights. ROSALES waived his rights, and
23  I subsequently conducted a recorded interview of ROSALES. During the post-Miranda
24  interview, ROSALES denied knowledge of controlled substances in the Vehicle, and said
25  that he had purchased his car in January from a buyer he met through Craigslist for $16,000.
26  He further stated that he is the only one with keys to the car and does not have a spare.
27  Rosales said he traveled to Tijuana earlier on March 21, 2019 (the date of his arrest), went
28  to a club in Tijuana, ate, and was headed back to his home in Quail Valley, California when

1  he was arrested. He indicated the Vehicle had been parked in a paid lot at a market near
2  the club. He considered the lot safe.

3        15.     I have reviewed the crossing history in the TECS system for the vehicle
4  ROSALES was driving when he was arrested and determined that ROSALES began
5  crossing the Vehicle regularly into the United States (sometimes more than once per week)
6  since at least February 8, 2019. The records also indicate the Vehicle entered Mexico at
7  about 11:04 a.m. on March 18, 2019. Rosales walked back into the United States from
8  Mexico early in the morning on March 19, 2019. The next crossing record for the Vehicle
9  was the day of Rosales's arrest, March 21, 2019, when he tried to re-enter the U.S. from
10 Mexico. In his post-arrest statement, Rosales did not say or indicate that the Vehicle had
11 been in Mexico since March 18 as the TECS records indicated.

12        16.     I extracted the contents of the seized cell phone at the POE using the Cellebrite
13 application, and a report was generated. I reviewed the report.  Among other items, the
14 phone contained pictures, a call log, and text-based communications that tended to
15 demonstrate the phone was used up until the day of arrest.  Information extracted from the
16 cell phone reflected that the associated phone number is (951) 758-2732, and subscriber
17 information reflected that the phone number is subscribed to David Perez and the provider
18 is T-Mobile.

19        17.     Based upon my experience investigating drug smuggling, my training, and my
20 consultation with other investigators who have experience investigating drug smuggling
21 near the border, I understand drug smugglers will seek to smuggle drugs from Mexico to
22 the United States by hiding the drugs in hidden compartments of vehicles, and in non-
23 factory compartments (i.e., compartments that the manufacturer did not design for ordinary
24 use). Smugglers will then drive north from Mexico and seek to pass through POEs with the
25 drugs undetected.  I am also aware that such individuals will sometimes try to generate a
26 history of crossings to show that driving through a POE is ordinary behavior for them.
27 When they arrive in the United States, smugglers will take the drugs to a discreet location

28

to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

18.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

a.  Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

b.  Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

c.  Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

d.  Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

e.  Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings;

f.  The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g.  Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular

telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

19. Given the facts surrounding ROSALES's arrest, my review of ROSALES's border-crossing activity, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit there is probable cause to believe ROSALES used the phone associated with the Account, and information relevant to the smuggling activities of ROSALES will be found in a review of the Account. Based on the foregoing and in light of my training and experience, I further submit there is probable cause to authorize a review of the Account for three months prior to ROSALES's arrest, *i.e.*, from December 22, 2018 up to and including March 21, 2019.

20. In my training and experience, I have learned T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including Cell Site Location Information (CSLI), also known as "tower/face information" or "cell tower/sector records." CSLI data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, CSLI data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. I also know from my training and experience that Mobile Network Operators (MNO's) commonly collect and store historical precision location information that may provide historical geographic location of a user's mobile device. This data may provide an

7

estimate of the user's mobile device locations. This technology is MNO specific and may be referred to as Round Trip Tool/Time (RTT), Per Call Measurement Data (PCMD), Network Event Location System (NELOS), TDOA or Timing Advance Information (TrueCall), and Activity Log.

22.     Based on my training and experience, I know T-Mobile can collect CSLI data about phones, including information constituting the Account.  I also know that wireless providers such as T-Mobile typically collect and retain CSLI data pertaining to cellular phones to which they provide service in their normal course of business, including roaming phones from other carriers that connect to the T-Mobile network, in order to use this information for various business-related purposes.

23.     Based on my training and experience, I know wireless providers such as T-Mobile typically collect and retain information about their subscribers and network users in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the methods of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about a phone's use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the phone associated with the Account and may assist in the identification of co-conspirators.

## CONCLUSION

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.     Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Account to be seized,

1  as set forth above and in Section I of Attachment B, will be found in the location described

2  in Attachment A, and will contain evidence of violations of 21 U.S.C. §§ 952 and 960.

3  Therefore, I respectfully request that the Court issue a warrant authorizing me, or another

4  federal law enforcement agent, to order T-Mobile to search its corporate records for the

5  Account and to order T-Mobile to deliver the Account listed in Section I of Attachment B.

6

7                                                          Ryan Morse, Special Agent

8                                                          Homeland Security Investigations

9  Subscribed and sworn to before me

10 this _10_ day of July, 2019.

11

12                                                          Hon. William V. Gallo

13                                                          United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28